IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 19-cv-01544-RBJ

DUSTIN BUHRMAN,

    Plaintiff,

v.

AUREUS MEDICAL GROUP, a Nebraska corporation and
AUREUS NURSING, LLC, Nebraska corporation registered in Colorado,

    Defendants.

---

## ORDER on MOTION to DISMISS OR TRANSFER

---

Defendants move for an order either dismissing the case for improper venue or transferring venue to the United States District Court for the District of Nebraska. The motion is denied.

## BACKGROUND

Dustin Buhrman is a nurse licensed in Ohio, Colorado, Alaska and California. He was hired by Aureus Medical Group, through its subsidiary Aureus Nursing (collectively "Aureus") as a travel nurse. During the period June to September 2018 he was working for Aureus as a travel nurse at the Medical Center of the Rockies in Loveland, Colorado.[1]

---

[1] Although not referenced in the Amended Complaint, it appears to be undisputed that Mr. Buhrman was employed by Aureus in Colorado from at least April 30, 2018 through at least July 19, 2018. He signed an employment agreement with Aureus on April 14, 2018. ECF No. 36-2. Defendants label it the "Colorado Employment Agreement." ECF No. 37 at 2. This agreement specified a start date of April 30, 2018 and a scheduled end date of July 21, 2018. *Id.* at 3. According to the Declaration of Lizabeth Hall,

1

Mr. Buhrman alleges that he is a disabled individual as defined in the Americans with Disabilities Act ("ADA"). Amended Complaint, ECF No. 31, at ¶10. His claimed disability is HIV. He has been under a doctor's care for HIV since it was diagnosed, although his viral load, a measure of the amount of HIV in his blood, is undetectable. *Id.* at ¶11. He alleges that he did not work in a position where his HIV would affect patients, staff or others. *Id.* at ¶13.

Apparently in July 2018 a monitor fell on Mr. Buhrman's toe. He was placed on leave, and he was authorized to receive workers compensation medical services. *Id.* at ¶14. However, he was required to sign a release so that Aureus could obtain his medical records. As a result, Aureus discovered that he had HIV. *Id.* at ¶¶17-18. At that time Aureus had been working with him on a new travel placement in Alaska. The Alaska assignment was formalized in a written contract on July 29, 2018. *Id.* at ¶20.[2]

On July 30, 2018 Aureus sent Mr. Buhrman medical forms to be filled out, including forms for both Mr. Buhrman and his doctor to answer questions about his HIV status. His doctor filled out her form and explained that because of his viral load and the fact that Mr. Buhrman was not involved in exposure-prone procedures in his nursing work, there were no concerns about his HIV affecting others. *Id.* at ¶24. Mr. Buhrman did not fill out his questionnaire at that time because he was leaving for vacation, but he indicated that he would do so upon his return. He alleges that he was told by an Operations Manager that so long as he completed the forms, his HIV status would not affect his employment. *Id.* at ¶22.

---

Mr. Buhrman completed his assignment under the Colorado Employment Agreement on July 19, 2018. ECF No. 36-1 at ¶3.

[2] Aureus refers to this second contract as the "Alaska Employment Agreement." ECF No. 37 at 2. Dated July 29, 2018, it specifies a start date of September 10, 2018; a scheduled end date of December 14, 2018; and; and placement at the Alaska Heart Institute in Anchorage, Alaska. ECF No. 36-3 at 4.

Mr. Buhrman had been scheduled to leave for Alaska on September 6, 2018. He filled out some of the forms on September 5. However, he initially objected to the part of one of the forms that asked about his infection status, medications, medication schedule, medication effectiveness, and what would happen if he did not take his medication. *Id.* at ¶¶25-26. Nevertheless, he apparently changed his mind and sent in the completed form on the evening of September 5. He flew to Seattle on his way to Alaska as scheduled the following morning, but upon arrival in Seattle he was called by his Account Manager, and his employment was terminated. He was told that he was terminated because he had "misrepresented himself," and that Aureus had a "zero tolerance policy for this." *Id.* at ¶29. Plaintiff alleges that the Account Manager told him that he did not know in what way he had misrepresented himself because the information was confidential. *Id.*[3]

Mr. Buhrman filed this lawsuit on May 30, 2019. In his initial Complaint he asserted three claims for relief: (1) discrimination in violation of the ADA; (2) wrongful termination in violation of Colorado public policy; and (3) breach of contract. ECF No. 1. Aureus filed a motion to transfer the case to the United States District Court for the District of Nebraska pursuant to a forum selection clause in Mr. Buhrman's employment contract. ECF Nos. 16. That motion became moot upon Aureus's filing an Amended Motion to Transfer on the same day. ECF No. 18. Mr. Buhrman responded, and Aureus replied. ECF Nos. 20 and 23.

---

[3] In their statement of defenses in the Scheduling Order defendants explain when Mr. Buhrman was first employed he stated in a confidential post-offer, pre-employment medical history that he did not have a blood borne contagious disease. Again in July 2018 Mr. Buhrman indicated in his updated medical history that he did not have a blood borne contagious disease. However, on September 5, 2018 Mr. Buhrman disclosed that he had been diagnosed with HIV before he completed the first medical history form in April 2018. Defendants contend that Mr. Buhrman's "falsification of information in the hiring and employment process" was a legitimate, non-discriminatory reason for terminating his employment. *See* ECF No. 34 (Scheduling Order) at 3-4.

3

Mr. Buhrman then filed his Amended Complaint in which he dropped the public policy and breach of contract claims. ECF No. 31. His sole claim, therefore, is a violation of the ADA. Aureus then filed a motion to dismiss the case for lack of venue or, alternatively, to transfer venue to the United States District Court for the District of Nebraska. ECF No. 36. That motion moots the earlier amended motion to transfer. Mr. Buhrman has responded, and Aureus has replied. ECF Nos. 38 and 39.

## ANALYSIS AND CONCLUSIONS

It is undisputed that Mr. Buhrman signed two employment contracts with Aureus. *Supra* nn.1, 2. His employment was terminated on September 5, 2018. It appears that the second contract, sometimes referred to as the Alaska Employment, was in effect at that time. In any event, the parties have not disputed that one or the other of the two agreements was in effect when Mr. Buhrman's employment was terminated. If so, then it doesn't matter which one, as they both contained the same choice of laws and forum selection clause, i.e., "The laws of the State of Nebraska shall govern this Agreement and the exclusive venue for the pursuit of any legal proceeding or remedy *arising out of this Agreement* shall be in Douglas County, Nebraska." ECF No. 36-2 at 6 (Colorado Employment Agreement); ECF No. 36-3 at 9 (Alaska Employment Agreement) (emphasis added).

Forum selection clauses "should be given controlling weight in all but the most exceptional cases." *Atlantic Marine Constr. V. U.S. Dist. Court for the Western District of Texas,* 571 U.S. 49, 62 (2013). Here, the parties do not seriously dispute the validity of the forum selection clause. Nor do I. Further, I find that no exceptional circumstances have been shown, and I conclude that the clause is fully enforceable.

The issue, however, is whether the clause applies to this case. The sole claim remaining in this case is whether Aureus's termination of Mr. Buhrman's violated the ADA. The alleged discrimination occurred during the employment relationship, and I will assume for present purposes that signing Aureus's standard form contract was a condition of his employment. That does not mean that the ADA claim "arose out of" the Agreement, and I conclude that it did not. In my view, this conclusion is reinforced by the invocation of Nebraska law in the same sentence. Nebraska law governs the agreement, but it has no application to a federal discrimination claim.

Unlike some of the cases cited by Aureus, ECF No. 37 at 6-7, the claim does not involve the same operative facts as a parallel claim for breach of the employment contract. Resolution of the case does not require interpretation of the contract.[4] The forum selection clause does not have broadening language such as "*arising between the parties in any manner or related to* the Agreement," *Sanders-Darigo v. CareersUSA,* 847 F.Supp. 2d 778, 786 (E.D. Pa. 2012) (emphasis added). Or, "all claims or causes of action *relating to or arising from* this Agreement," *Slater v Energy Servs. Group Intern, Inc.,* 634 F.3d 1326, 1330-31 (11th Cir. 2011) (emphasis added). I agree with the Second Circuit when it stated, "To 'arise out of' means 'to originate from a specified source.'" *Phillips v. Audio Active Limited,* 494 F.3d 378, 389 (2d Cir. 2007) (quoting Webster's Third New International Dictionary 117 (1981)). "We do not

---

[4] In its reply brief Aureus asserts that it terminated Mr. Buhrman's employment due to his "[f]alsification of documents, contrary to Aureus's Code of Ethics which is found in the Alaska Employment Agreement. ECF No. 39 at 4. The Court ordinarily does not consider arguments raised for the first time in a reply brief. However, this defense position was not unknown to the plaintiff. *See supra* n.3. In any event, no contractual interpretation is required. Aureus could offer falsification of documents by Mr. Buhrman as a non-discriminatory, non-pretextual reason for the termination regardless of its Code of Ethics or contractual interpretation, as its description of its defense in the Scheduling Order illustrates.

understand the words, 'arise out of' as encompassing all claims that have some possible relationship with the contract, including claims that may only 'relate to,' be 'associated with,' or 'arise in connection with' the contract." *Id.*

Aureus makes much of the fact that the original complaint in this case included a common law wrongful discharge claim and a breach of contract claim. Plaintiff dropped those claims after Aureus first moved for a transfer to Nebraska, obviously to bolster his venue position. Aureus labels this tactic "artful pleading" and "gamesmanship." Whether or not the labels apply, the fact is that those claims are gone, and the remaining claim does not arise out of the Agreement.

This is not to say that Aureus could not draft a broader forum-selection clause that would include claims such as the ADA claim in this case. It is only to say that the subject clause is not such a clause. By its plain terms, it does not reach this case.

## ORDER

1. Defendants' Amended Motion to Transfer, ECF No. 18, is DENIED AS MOOT.

2. Defendants' Motion to Dismiss First Amended Complaint or, in the Alternative, Transfer Venue, ECF No. 36, is DENIED.

DATED this 3rd day of February, 2020.

BY THE COURT:

R. Brooke Jackson
United States District Judge